Minshalu, J.
By the agreement of the parties the title to the property out of which the controversy arises in this case, was, in both instances, to remain in the vendor, until it was paid for by the purchaser. The validity of such agreements as to personalty, even as against innocent purchasers, was recognized as the law of this state at the time they were made, (Sage v. Sleutz, 23 Ohio St. 1; Sanders v. Keber, 28 Ohio St. 630; Call v. Seymour, 40 Ohio St. 670); it has been changed by statute (82 Ohio L. 238),. but the rights of the parties in *299 this case must be determined by the law as it existed at the time their contracts were made.
The property sold and transferred by The Case Manufacturing Company under its contract with Patton embraced the machinery employed in the manufacture of flour by the roller-system; that furnished by The Mansfield Machine Works supplied the motive power of the mill, and consisted of an engine and boiler with the usual attachments.
For the purpose of keeping them in place when in use, some of the machines were fastened to the floor with bolts, others were held in place by their own weight, and, as found by the court “all could easily have been detached, removed and set up in another building without material injury to the machines themselves or to the building.” Of the motive power, the boiler was inclosed by brick walls between which it was suspended and held in place by suitable appliances in the usual way; the engine rested upon a stone foundation imbedded in the ground, to which it was fastened by bolts passing through an iron plate — part of the engine — -into the foundation; and, as found, all could have been removed without any material injury to the machinery, or to the building, other than the removal of some weather-boarding inclosing an opening in the foundation wall through which it had been imtroduced.
All the machinery furnished by these two parties under their agreements with the mill-owner is readily distinguishable into two classes, namely, (1), that which supplied the motive power of the mill, and (2), that which was propelled by it. It is a distinction generally recognized by those who run and operate mills as well as by the courts, being founded in the general character of the machinery of each class, and the mode in which it is usually placed upon the premises for use.
The machinery furnishing the motive power is generally more closely annexed to the freehold, and of a more permanent nature, as the power furnished by it may be adapted to the propulsion of the machinery of a variety of mills without any substantial change in the motive power itself or in the building other than by substituting one kind of machinery for *300 another; whilst the machinery that is propelled, has more of the general character of personalty, is not as a rule so closely annexed to the freehold, and may be removed, and frequently is, from one mill to another, as any other article of personalty; and is more properly “ accessory to the business” carried on upon the realty than to the realty itself. Goepper v. Fortman, 14 Ohio St. 567.
PIcnce, it has generally been held in this country that articles of machinery used in a factory for manufacturing purposes, only attached to the building to keep them steady in their places, so that they may be more serviceable when in use, and that may be removed without any essential injury to the freehold or the articles themselves, are personal property and do not pass by a conveyance or mortgage of the freehold. Ewell Fix. 294. On the other hand, steam engines and boilers with their appliances, that supply the motive power of machinery, and, for purpose of use, are usually stably attached to the realty, pass by a conveyance or mortgage of the land. 1 Sch. Per. Prop. 155; Ewell Fix. 290; 1 Wash. R. P. 8.
In Teaff v. Hewitt, 1 Ohio St. 511, this distinction in the charter of the property and in the mode of its use and annexation to the realty, was taken and applied to the facts of that case. It is there said that <£ the machinery and implements in a manufacturing establishment, although useful and even essential to the business carried on, which are not permanently affixed to the ground or the structure of the building, and which can easily be removed without material injury to the building or articles themselves, and their places supplied by other articles of a similar kind, are not. fixtures, but personal property. But that portion of the machinery in such an establishment, which is firmly affixed to the earth orto the structure of the building, and which from its nature, mode of attachment, use, and the relative situation of the. party placing it there, was plainly intended to be permanent, is parcel of the freehold.” So it was there held that the carding machines of a woolen factory, attached to the building by cleats to coniine them to their proper places, and subject to removal whenever convenience or business required, were not fixtures, but chattels; whilst *301 the steam enginfe and boiler, used to supply the motive power, permanently fixed upon a foundation laid in the earth, were regarded as realty.
The difficulty of prescribing a rule that may be applied to cases in general* has been confessed both by courts and writers upon the subject; various tests have been adopted, none of which have been applied with anything like uniformity. It may however, be admitted that the distinction .between the motive power of a factory and the machines driven by it, is somewhat arbitrary; still it is one based uptin a physical difference, easily perceived, if not dictated by any well defined principle, and is no more illogical than many distinctions to be found in other branches of the law. That which divides all property into real and personal, is quite as wanting in anything like scientific classification; but, from its general recognition wherever the common law prevails, is found to bo very convenient in practice ; and it is such considerations that have always more or less influenced the adoption of definite rules of property.
It remains to be considered whether the result, as to either of these claims, indicated by the discussion, is to be varied by the finding of the court that all the machinery furnished by either of said parties “ were designed and intended for said mill, and were adapted to the same and to the said milling business, and intended by Patton when placed in said building, to be permanent and to become a part and parcel of said premises.” But that it was not the intention of either of them “ that said machinery so furnished by them, respectively, should become a part and parcel of said real estate, and become the property of the said Patton, and remain permanently attached to said mill unless they were fully paid for.”
There is no question but that the character of things which would otherwise be fixtures, may be changed to that of personalty by the agreement of the parties, and conversoly, so as to be binding upon them. And the stipulation of the vendor in each of these cases, that the title to the property furnished by it should not pass until it had been paid for by the purchaser, precludes the idea that either of them intended that *302 the machinery furnished by it, should become a part of the realty until payment had been made, as, to impute a different intention, would be to suppose that neither intended the benefit of a stipulation exacted with the greatest care in its own behalf. In such case the intention of the purchaser must be regarded as subordinate to the prior intention of the vendor, expressed in the agreement by which he has possession of the property. Tifft v. Horton, 53 N. Y. 377.
But the question remains, as to the Mansfield Machine Works whether it can have the benefit of its stipulation, that the title to the property furnished by it should not pass, nor, by inference,' become a part of the realty, until paid for. Here the question is not whether the character of the property may bo changed by the agreement of the parties, as between themselves; of this there is no doubt; but, when the property is such that from the manner of the annexation it would, but for the agreement, ordinarily be regarded as a fixture, whether it can be made by the agreement of the parties to preserve the character of personalty so as to avail against innocent purchasers without notice ? This must, we think, upon principle and authority, be answered in the negative. The point, though not directly presented by the record, was considered in Fortman v. Goepper, 14 Ohio St. 558, where the doctrine of Ford v. Cobb, 20 N. Y. 344, holding the affirmative, was disapproved. It was, however, directly presented in the subsequent case of Brennan v. Whitaker, 15 Ohio St. 446, upon a state of case very similar to that presented by the record before us: B. sold an engine and boiler to F., and, after they had been placed by himself upon the premises of F. as the motive power of his saw-mill, took a chattel mortgage thereon to secure the purchase-money; the property was described in the mortgage as the steam engine and boiler sold to, and then in the possession of, F., and “ designed to be used in his saw-mill; ” and it was stipulated in the condition, that in case payment was not made when the money became duo, the vendor might enter upon the premises of the purchaser and retake the property wherever it might be found, “ whether the same should be áttached to the freehold and in law a part of the realty or not,” and remove *303 the same. But it was held that neither the mortgage, nor the stipulation in it, was available as against a subsequent mortgagee of the freehold without actual notice thereof. And White, J., again disapproving the case of Ford v. Cobb, said, “ it seems to us to be the sounder rule, and more in accordance with principle, and the policy of our recording laws, to require actual severance, or notice of a binding agreement to sever, to deprive the purchaser of the right to fixtures or appurtenances to the freehold.”
The fact that the Machine Works took a chattel mortgage upon the engine and boiler, in addition to the stipulation as to the title, does not seem to help its case. It caused the property to be annexed to the realty of the purchaser in such manner, that, but for the agreement, it would become a part of it. The subsequent mortgagees of the realty had no notice of the agreement or of the chattel mortgage. And to use the language of White, J., in the case above cited, it then devolved upon the vendor, if it “ sought to change the legal character of the property, and create incumbrances upon it, either to pursue the mode prescribed by law for incumbering the kind of estate to which it appeared to the world to belong, and for giving notice of such incumbrance, or, otherwise, take the risk of its loss in case it should be sold and conveyed as a part of the real estate to a purchaser without notice.”
Nor, so far as we see, is there any want of consistency in the ruling as to the two cases. The machinery furnished by The Case Manufacturing Co., did not, from the manner of its use and mode of annexation, become a part of the realty. The effect of the agreement was, not to preserve its character of personalty — it would have retained this character without the agreement — but to prevent the title passing from the vendor to the purchaser until the property had been paid for; and if there is any apparent want of justice in giving effect to the agreement as against a purchaser without notice, it is in the rule itself, and not in the application of it. Not so however, as to the machinery that constituted the motive power; this, as we have shown, was so annexed, that, but for the agreement, it would have been a fixture, and so a part of the realty • and *304 the agreement could not take effect without that being regarded as personalty which would otherwise be realty; and it is giving effect to such agreement as against innocent purchasers, that, as said in the case just referred to, is regarded as against the policy of our registration laws.
Judgment modified so as to give priority to The Case Manufacturing Company over the mortgages of the realty in the distribution of the fund, and affirmed as to all else.